# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## French *against* Seely.

A party to an exchange of land, who has obtained possession under the contract, and who, by his own act, has put it out of his power to give the other party possession or to execute the contract, will not be permitted, in an ejectment against him, to recur to it for purposes of defence; nor will any improvements made upon the land under such circumstancs give to the defendant any equity, or entitle him to a conditional verdict.

ERROR to the common pleas of *Bradford* county.

George W. French against William Seely. Ejectment for four hundred acres of land.

The plaintiff's title was founded upon an application dated the 23d of July 1835, accompanied by *affidavits* that the land had been first improved in 1807 and grain raised thereon, &c., upon which a warrant issued the same day, and a survey was made on the 14th of September 1835, and a patent granted to George W. French, the plaintiff, on the 30th of October 1835.

The defendant, to maintain the issue on his part, gave evidence that he had entered into a parol contract with the plaintiff to exchange a tract of land for the land in dispute, and in pursuance of this agreement he had gone into possession and made valuable improvements. He admitted the contract of exchange had not been

[French v. Seely.]

executed, but contended that if the plaintiff was entitled to recover the land, it should only be by a conditional verdict, which would subject the plaintiff to the payment of the value of the improvements made by the defendant.

The evidence showed that after the defendant went into possession of the land under the contract of exchange, he thought he discovered the plaintiff had no title to it, and made an effort to obtain the title himself from the commonwealth; but upon a *caveat* by the plaintiff, the board of property decided in his favour, and granted to him a patent, which became conclusive of the title as between these parties by the lapse of time under the act of April 1792. This was determined upon a former trial of the cause. It now appeared that the defendant had put it out of his power to execute the contract of exchange by parting with the land which he had exchanged and engaged to convey to the plaintiff; and relied solely upon the fact that he had made valuable improvements upon the land, such as would entitle him to a conditional verdict.

The plaintiff requested the court to instruct the jury upon the following points, which the court answered.

1st. That the plaintiff has made out a perfect legal title to the land in dispute, which would entitle him to recover, unless the defendant has shown that he ought not to recover.

Answer. In the affirmative.

2d. That the proceedings before the board of property under the act of April 1792, and the neglect to bring suit within six months after their decision, were conclusive and final as between Seely and French, so far as it regards all Seely's right to the lands in question.

Answer. This is correct as to the title, but does not preclude the defendant from claiming as a purchaser under the plaintiff's title.

3d. That there being no controversy as to the facts, it is the duty of the court to declare the law arising from the facts; and the jury are bound to adhere to the law as the court declares it.

Answer. In the affirmative.

4th. That the sale to Strong, by Seely, of the farm he had previously contracted to exchange with French for the lands in dispute, put it out of his power to comply with his contract with French, and was in itself such a recision of the contract as that a chancellor would not decree a specific performance, and therefore Seely cannot now defend under the contract and defeat the plaintiff's recovery.

Answer. Unless the defendant was guilty of fraud, the jury might, if they thought proper, from all the evidence, value the improvement or farm, and find a conditional, equitable verdict.

5th. That as the defendant put it out of his power to comply with his part of the contract by his own voluntary act, a chancellor would not decree a specific performance, and therefore the defendant has failed in his defence, and the jury cannot give a conditional verdict in the nature of a decree in chancery.

[French v. Seely.]

Answer. This would be correct if the defendant was guilty of fraud; otherwise not.

6th. That Seely's application for and obtaining a warrant for four hundred acres, including the land now claimed under the contract, and setting up this claim before the board of property, and the defence set up by Seely, on a previous trial of this cause, of absolute title in himself, adverse to French's claim, and without claiming under the agreement of purchase, amount to such a recision of the contract and such an estoppel as will prevent the defendant from now setting up his contract to obtain a conditional verdict.

Answer. If the defendant was not guilty of fraud, the court think otherwise.

7th. That Seely's improvements after he obtained his warrant give him no additional equity, as he then claimed adversely to French.

Answer. The court think otherwise.

8th. The facts in this case being uncontroverted, that the plaintiff is entitled to recover absolutely, and as a chancellor would not decree a specific performance, the jury cannot legally render a conditional verdict.

Answer. If there was no fraud on defendant's part, it would be otherwise.

Errors.

1st. The court erred in their answers to the 2d, 4th, 5th, 6th, 7th and 8th points upon which they were requested to charge the jury.

2d. The judgment in this case ought to be absolute, without any condition in favour of the defendant.

The jury found the following verdict.

" We find for the plaintiff, but subject to be set aside and judgment for defendant for two hundred and fifty acres of land to be taken upon the east side of the said tract in question to cover the improvements of defendant, on the said defendant's paying into court for the plaintiff the sum of *350 dollars*, with interest and costs, in two years from the time of rendering this verdict."

*Overton*, for plaintiff in error.
*Elwell* and *Williston*, for defendant in error, cited, 4 *Rawle* 374.

The opinion of the Court was delivered by

GIBSON, C. J.—This is a remarkable case. A party to an exchange who had renounced it by setting up an adverse title to the land he had obtained by it, and who sold the land he was to have given in return, was still allowed to recur to the contract for purposes of defence! And how? On the principle of an injunction in the nature of a bill for specific performance, invigorated in the particular instance, it was thought, by improvements made in defiance of the title. It is scarce necessary to say that this was a violation, not only of Ong *v.* Campbell, 6 *Watts* 392, and the chancery precedents which require that a party insisting on a contract should have

been faithful to it, but of every analogy of the law. It is to prevent a party from recurring to a contract he has repudiated, that a recusant tenant is forbidden to insist on notice; or a widow, who has taken a benefit by her husband's will, to insist on dower in contravention of it; or a plaintiff, who has disaffirmed an act by an action in one right, to affirm it by an action in another; or, in short, any one to claim in repugnant rights. In addition to this, the party insisting on performance here, not only has refused to perform himself, in contravention of a principle which requires a tender to precede a demand of specific execution, but has actually disabled himself from affording it. And what did he offer in place of it? Nothing but a pecuniary substitute which would turn the exchange into a sale; and it was allowed to pass. Was that the plaintiff's bargain, or a bargain made for him? He was denied the specific consideration which had moved him to part with his property, and compelled to accept a compensation for it. This result is a curious sort of specific execution. What authority had he given the jury to sell his land? It is the vice of the times to disregard contracts; and there is a too prevalent disposition in the popular branch of the judiciary to remould them in order to bring them nearer to its standards of conscionableness which cannot be too narrowly watched. Even were such a power vested in the jury, there is nothing in the case for an exercise of it. The improvements could not give the defendant an equity, natural or artificial. Believing the land delivered to him pursuant to the bargain, to be as open to appropriation by him under a title from the state as it had been to the plaintiff, and having not only taken out a warrant for it, but sold what he was to have given for it—a double renunciation of the contract; he engaged with the plaintiff in a contest for it before the board of property, whose decision against him he suffered to become conclusive by lapse of time; and having thus been turned into a wrongdoer, he made the improvements in question. The case then presents an attempt, not merely to make an owner debtor for improvements made in contempt of his will, but to divest his property for a compensation graduated by a jury; and this, not to serve a public purpose, but to compensate, in the name of equity, the adverse improvements of a private trespasser. To do that, would transcend the constitutional power even of the legislature, to say nothing of the admitted want of pretension on the part of the judiciary. It is impossible to imagine any thing more palpably illegal than the exercise of such a power here. The defendant's supposititious equity was put on the absence of fraud, when each of his acts was, in contemplation of law, an unqualified fraud. His attempt to prove an adverse title, colourable we must suppose from his acquiescence in the decision of the board of property, was a fraud; the sale of his own land, in disaffirmance of his contract of exchange, was a fraud; and his subsequent erection of improvements, in contempla-

[French v. Seely.]

tion of an equity from them, was a fraud and a folly. He had, then, not the shadow of a defence ; and the direction prayed for should have been given.

Judgment reversed, and a *venire de novo* awarded.